# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP330 & 2015AP1311 |
| COMPLETE TITLE: | In re the commitment of David Hager, Jr.: |

State of Wisconsin,
   Petitioner-Respondent-Petitioner,
  v.
David Hager, Jr.,
   Respondent-Appellant.

-------------------------------------------------

In re the commitment of Howard Carter:

State of Wisconsin,
   Petitioner-Respondent,
  v.
Howard Carter,
   Respondent-Appellant-Petitioner.

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 373 Wis. 2d 692, 892 N.W.2d 740
(2015AP330) and 372 Wis. 2d 722, 892 N.W.2d 754
(2015AP1311)
PDC No:  2017 WI App 8 – Published (2015AP330)
and 2017 WI App 9 – Published (2015AP1311)

| | |
|---|---|
| OPINION FILED: | April 19, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 1, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Chippewa (2015AP330), Brown (2015AP1311) |
| JUDGE: | James M. Isaacson (2015AP330), Kendall M. Kelley (2015AP1311) |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | KELLY, J., concurs, joined by R.G. BRADLEY, J. (opinion filed). |
| DISSENTED: | ABRAHAMSON, J., dissents, joined by A.W. BRADLEY, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the petitioner-respondent-petitioner (2015AP330), there were briefs filed by *Thomas J. Balistreri*, assistant attorney

general, and *Brad D. Schimel*, attorney general.  There was an oral argument by *Donald V. Latorraca*, assistant attorney general.

For the respondent-appellant (2015AP330), there was a brief filed by and an oral argument by *Andrew R. Hinkel*, assistant state public defender.

For the respondent-appellant-petitioner (2015AP1311), there were briefs filed by *Len Kachinsky* and *Kachinsky Law Offices*, Neenah.  There was an oral argument by *Len Kachinsky.*

For the petitioner-respondent (2015AP1311), there was a brief filed by *Thomas J. Balistreri*, assistant attorney general, and *Brad D. Schimel*, attorney general.  There was an oral argument by *Donald V. Latorraca*, assistant attorney general.

2

No.   2015AP330 & 2015AP1311
(L.C. No.   2007CI1 & 2007CI3)

STATE OF WISCONSIN          :      IN SUPREME COURT

**In re the commitment of David Hager, Jr.:**

**State of Wisconsin,**

       **Petitioner-Respondent-Petitioner,**

   **v.**

**David Hager, Jr.,**

       **Respondent-Appellant.**

NOTICE

This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.

**FILED**

**APR 19, 2018**

Sheila T. Reiff
Clerk of Supreme Court

**In re the commitment of Howard Carter:**

**State of Wisconsin,**

       **Petitioner-Respondent,**

   **v.**

**Howard Carter,**

       **Respondent-Appellant-Petitioner.**

REVIEW of two decisions of the Court of Appeals. *Reversed and cause remanded in* State v. Hager; *Affirmed in* State v. Carter*.*

¶1 MICHAEL J. GABLEMAN, J. This is a review of two published decisions of the court of appeals, State v. Hager, 2017 WI App 8, 373 Wis. 2d 692, 892 N.W.2d 740, and State v. Carter, 2017 WI App 9, 373 Wis. 2d 722, 892 N.W.2d 754.[1] Both cases involve the discharge procedure for a person civilly committed as a sexually violent person pursuant to Wis. Stat. ch. 980 (2015-16) ("Chapter 980").[2] David Hager, Jr., and Howard Carter both filed petitions for discharge from commitment as sexually violent persons pursuant to Wis. Stat. § 980.09 with the Chippewa County Circuit Court[3] and Brown County Circuit Court,[4] respectively, and both petitions were denied. Hager and Carter appealed.

¶2 In Hager, the court of appeals reversed, concluding that the circuit court erred in two ways: (1) by considering evidence unfavorable to Hager's discharge petition; and (2) by weighing the evidence in favor of the discharge petition against

[1] We consolidated these two cases after oral argument because they present similar issues and facts.

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[3] The Honorable James. M. Isaacson presiding.

[4] The Honorable Kendall M. Kelley presiding.

the evidence opposed. Hager, 373 Wis. 2d 692, ¶5. Based on its review of the record, the court of appeals concluded that Hager had satisfied his burden of production[5] and reversed and remanded the matter to the circuit court with instructions to conduct a discharge trial pursuant to Wis. Stat. § 980.09(3)-(4). Id. In Carter, the court of appeals affirmed the circuit court, concluding that Carter had not satisfied the standard it had established in Hager. Carter, 373 Wis. 2d 722, ¶3.

¶3  Both cases involve the proper interpretation of Wis. Stat. § 980.09(2), as amended by 2013 Wis. Act 84,[6] which establishes the procedures for discharge from commitment. Carter raises two additional issues before this court:  (1) whether § 980.09(2) violates the right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Wisconsin Constitution; and (2) whether Act 84 applies retroactively to Carter.  We review this last issue, whether Act 84 applies retroactively to Carter, through the lens of ineffective

---

[5] The party carrying the burden of production must "introduce enough evidence on an issue to have the issue decided by the fact-finder" and not by the court in a pre-trial ruling. Black's Law Dictionary 236 (10th ed. 2014).

The party carrying the burden of persuasion must "convince the fact-finder to view the facts in a way that favors that party." Black's Law Dictionary 236 (10th ed. 2014).

[6] For clarity, we refer to the entire section, as amended, as "Wis. Stat. § 980.09(2)," and refer to the specific amendments made to § 980.09(2) by Act 84 simply as "Act 84."

3

assistance of counsel because Carter's counsel did not contest the application of the amended standard to Carter.  See State v. Erickson, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999).

¶4   We hold as to both Hager and Carter that the court of appeals erred in concluding that Wis. Stat. § 980.09(2) limits circuit courts to considering only the evidence favorable to petitions for discharge.  We hold that circuit courts are to carefully examine, but not weigh, those portions of the record they deem helpful to their consideration of the petition, which may include facts both favorable as well as unfavorable to the petitioner.

¶5   We further hold that Wis. Stat. § 980.09(2) does not violate the constitutional right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Wisconsin Constitution, and furthermore, Carter's counsel was not ineffective for failing to challenge retroactive application of Act 84 to Carter.

¶6   As to Hager, we reverse the decision of the court of appeals and remand the matter to the circuit court for further proceedings consistent with this opinion; as to Carter, we affirm the decision of the court of appeals, albeit on different grounds.

I.  FACTUAL AND PROCEDURAL BACKGROUND

A.  State v. Hager

4

¶7 Hager was involuntarily committed in 2008 as a sexually violent person pursuant to Chapter 980[7] as he neared the completion of prison sentences he was serving as a result of having been convicted of two sexual offenses.

¶8 He filed the discharge petition we consider herein on February 27, 2014. Hager attached to the petition the report of Hollida Wakefield, M.A. In her report, Wakefield concluded that Hager did not satisfy the third criterion for commitment because he was not likely to engage in acts of sexual violence. She based this conclusion on the results of two actuarial instruments, the Static-99R and MATS-1.[8]

---

[7] The State must prove three criteria in order to commit a person as a sexually violent person pursuant to Chapter 980:

(1) The person was "convicted of a sexually violent offense," was "found delinquent of a sexually violent offense," or was "found not guilty of a sexually violent offense by reason of mental disease or defect."

(2) "The person has a mental disorder."

(3) "The person is dangerous to others because the person's mental disorder makes it likely that he or she will engage in acts of sexual violence."

Wis. Stat. § 980.02(2). In order to initially commit an individual pursuant to Chapter 980, the State must prove these elements beyond a reasonable doubt. Wis. Stat. § 980.05(3)(a). In order to continue commitment, the State must prove the same three elements by clear and convincing evidence at the discharge trial. Wis. Stat. § 980.09(3).

[8] Understanding this decision requires a grasp of both actuarial instruments and their use in Chapter 980 proceedings.

(continued)

5

¶9 The circuit court denied Hager's petition because Wakefield's report did not indicate any change in Hager; rather, the circuit court found "Mr. Hager is still the same person he was." The circuit court was not persuaded that the development of the Static-99R[9] constituted a change in professional knowledge sufficient to warrant a discharge trial under the standard

---

Often (as here), the only testimony in a Chapter 980 proceeding is expert testimony. The only witnesses are examiners, who describe the sexually violent person's history, offer diagnoses as to his mental condition, and opine about his dangerousness.

In the 1990s, researchers began developing and releasing tools meant to give an objective picture of a sexually violent person's risk of reoffending. These tools, sometimes called actuarial instruments, ask a series of questions about the sexually violent person's history and, based on the answers, place the sexually violent person in a particular category, usually indicated by a number. Generally, a sexually violent person assigned a higher number is believed to present a greater risk, on average, than a sexually violent person assigned a lower number.

The developers of these instruments also released tables indicating the re-offense rates for groups of sexually violent people assigned particular numbers. Thus, for example, a score of 3 on the RRASOR (one of the first actuarial instruments developed) corresponded with a group of offenders of whom 24.8 percent would reoffend within five years. Those in the business of evaluating sex offenders for commitment often rely on these numbers in performing their assessments.

The two actuarial instruments relied on by Hager and Carter, the Static-99R and MATS-1, are relatively new. Neither existed at the time Hager and Carter were first committed.

[9] The circuit court did not make any findings regarding the MATS-1 in either its original decision or its decision on the motion for reconsideration.

6

established in State v. Combs, 2006 WI App 137, ¶32, 295 Wis. 2d 457, 720 N.W.2d 684.[10] The court did not find "any change in the expert's knowledge of Mr. Hager or his offense."

¶10 Hager filed a motion for reconsideration, which was denied. In its order denying Hager's motion for reconsideration, the circuit court amended its reasoning slightly, indicating that it had "tr[ied] to weigh [the] reports," and concluded that Hager did not satisfy his burden of production. This appeal followed.

¶11 The court of appeals determined that Act 84 did not abrogate our decision in State v. Arends, 2010 WI 46, 325 Wis. 2d 1, 784 N.W.2d 513. Accordingly, the court of appeals applied our holding in Arends——that circuit courts are not to weigh[11] the evidence in favor of the petition against the evidence opposed——to Hager. Hager, 373 Wis. 2d 692, ¶4. Rather, Act 84 both increased the burden of production necessary for committed individuals to receive a discharge trial and

---

[10] In Combs, the court of appeals interpreted a prior version of Wis. Stat. § 980.09(2) to require the petitioner to present "something more" than facts and professional knowledge considered at the last discharge trial in order to obtain a new discharge trial. State v. Combs, 2006 WI App 137, ¶32, 295 Wis. 2d 457, 720 N.W.2d 684. Thus, new facts regarding the petitioner's condition (e.g., treatment milestones) or new research regarding likelihood to reoffend (e.g., new actuarial tools) would satisfy this standard. Id.

[11] A circuit court weighs evidence when it "accept[s] one version of facts, [and] reject[s] another." State v. Stietz, 2017 WI 58, ¶18, 375 Wis. 2d 572, 895 N.W.2d 796 (quoting State v. Mendoza, 80 Wis. 2d 122, 152, 258 N.W.2d 260 (1977)).

codified certain cases, namely Combs and its progeny. Id., ¶¶32, 40-41. The court further concluded that Act 84 did not change our holding in Arends that circuit courts are limited to considering only the items in the record favorable to the petitioner. Id., ¶37. Under the court of appeals' reading of Wis. Stat. § 980.09(2), Hager had alleged sufficient new facts to warrant a discharge trial because Wakefield's report satisfied the criteria set forth in Combs by including new scientific research; namely, the Static-99R and MATS-1. The court of appeals reversed and remanded the matter to the circuit court with instructions to conduct a discharge trial. Id., ¶¶45-46.

### B. State v. Carter

¶12 Carter was involuntarily committed as a sexually violent person under Chapter 980 in 2009 as he neared the completion of prison sentences he was serving as a result of convictions of multiple sexual offenses.

¶13 He filed the discharge petition we consider herein on December 13, 2013, which was the day before Act 84's publication. Carter's attorney never challenged the application of the new standard to Carter.

¶14 Carter attached to his petition the report of Dr. Diane Lytton, Ph.D. Dr. Lytton concluded that Carter did not satisfy the third criterion for commitment. She based this conclusion on three opinions. First, Dr. Lytton stated that in

8

her professional opinion, one of Carter's diagnosed mental disorders, paraphilia not otherwise specified, nonconsent,[12] is not properly applied to a person such as Carter, who has forcibly raped another.  Second, Dr. Lytton opined that Carter's other diagnosed mental disorder, antisocial personality disorder,[13] does not make it likely he will engage in acts of sexual violence.  Third, Dr. Lytton opined that, based upon her application of the Static-99R and MATS-1 assessments, Carter is not likely to engage in acts of sexual violence.

¶15  The circuit court concluded that Dr. Lytton's report was insufficient to satisfy the Act 84 standard.  The court observed that relevant information from Carter's past did not appear in Dr. Lytton's report.  The court also noted the lack of citation and analysis regarding the validity of the Static-99R and MATS-1, which Dr. Lytton had relied on heavily in her

---

[12] Dr. Lytton did not define paraphilia, not otherwise specified, nonconsent.  Dr. Woodley defined it as "intense, recurrent sexually arousing . . . fantasies, urges, or behaviors to other than consenting adults . . . which the person acted on . . . ."  See also American Psychiatric Association, Diagnostic and Statistics Manual of Mental Disorders 705 (5th ed. 2013).

[13] Dr. Lytton did not define antisocial personality disorder.  Dr. Woodley defined it as "a long-term maladaptive pattern of behavior involving . . . the following:  repeated unlawful acts, deceitfulness, violating the rights and safety of others, impulsivity or failure to plan ahead, repeated lying, consistent irresponsibility, and lack of remorse for harming others."  See also American Psychiatric Association, Diagnostic and Statistics Manual of Mental Disorders 659 (5th ed. 2013).

report. The court described Dr. Lytton's report as "essentially an unsupported assertion."

¶16 Carter then filed a post-commitment motion alleging that the circuit court's denial of a discharge trial was improper for four reasons: (1) the court committed plain error in applying Act 84 to Carter; (2) Wis. Stat. § 980.09(2) violates his right to due process; (3) he received ineffective assistance of counsel because his attorney failed to contest application of Act 84 to Carter; and (4) he received ineffective assistance of counsel because his attorney failed to contest application of Wis. Stat. § 907.02(1), the rule of evidence governing expert testimony,[14] to the expert reports filed in Carter's case. The circuit court denied the motion, concluding: (1) Act 84 is procedural, and thus applies retroactively to Carter; (2) § 980.09(2) does not violate Carter's right to due process because he can still obtain a discharge trial upon making a sufficient showing; (3) Carter's counsel was not deficient for failing to challenge the application of Act 84 because the act did apply retroactively, and——even if his

_____

[14] Carter appealed the circuit court's conclusion that his trial counsel was not ineffective for failing to contest the application of Wis. Stat. § 907.02(1) to the expert reports in his case. State v. Carter, 2017 WI App 9, ¶10 n.4, 373 Wis. 2d 722, 892 N.W.2d 754. However, he does not raise this issue for our review, and we do not consider it further. See State v. Sulla, 2016 WI 46, ¶7 n.5, 369 Wis. 2d 225, 880 N.W.2d 659 (quoting Jankee v. Clark Cty., 2000 WI 64, ¶7, 235 Wis. 2d 700, 612 N.W.2d 297) ("If an issue is not raised in the petition for review or in a cross petition, 'the issue is not before us.'").

counsel's performance had been deficient in this regard——Carter suffered no prejudice because the court would have denied the petition even if it had used the prior standard; and (4) Carter's counsel was not deficient for failing to object to application of § 907.02(1) to the expert reports as the decision to do so was a legitimate strategic decision based on counsel's assessment that application of § 907.02(1) usually accrued to the benefit of the committed person, and, furthermore, Carter suffered no prejudice because the court would have made the same conclusions about Dr. Lytton's report under the prior standard.

¶17 The court of appeals affirmed, concluding that the amendments made by Act 84 did apply retroactively, therefore Carter's counsel was not deficient for failing to challenge retroactive application of Act 84.  Carter, 373 Wis. 2d 722, ¶22.  The court of appeals further concluded that Wis. Stat. § 980.09(2) does not violate the right to due process because, contrary to Carter's arguments before that court, § 980.09(2) does not require circuit courts to weigh evidence.  Id., ¶20. Because Carter did not contend that he had met the burden as established in Act 84,[15] the court of appeals treated its holding that the amendments made by Act 84 applied to Carter as dispositive of his appeal. Id., ¶21.

II.  STANDARD OF REVIEW

---

[15] In his opening brief to the court of appeals, Carter "reluctantly" agreed with the State that he did not satisfy Act 84's burden.  Before this court, Carter argues that he satisfies Act 84's burden as interpreted by the court of appeals in Hager.

11

¶18 This case requires us to interpret Wis. Stat. § 980.09(2) to determine the burden of production a petitioner must satisfy in order to receive a discharge trial. Statutory interpretation is a question of law we review de novo. Arends, 325 Wis. 2d 1, ¶13. We give words their "common, ordinary, and accepted meaning" unless a technical or specialized meaning applies. State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret the statute in its full context in order to avoid creating absurd results or rendering any statutory language surplusage. Id., ¶46. Though legislative intent may illuminate what the words of a statute mean, "it is the enacted law, not the unenacted intent, that is binding . . . ." Id., ¶44.

¶19 We then determine whether Hager and Carter are entitled to discharge trials. We review the circuit court's determination of whether the statutory criteria for a discharge trial have been met de novo. Combs, 295 Wis. 2d 457, ¶21.

¶20 Carter alleges that Wis. Stat. § 980.09(2) violates the right to due process. The constitutionality of a statute is a question of law we review de novo. State v. Alger, 2015 WI 3, ¶22, 360 Wis. 2d 193, 858 N.W.2d 346. A party challenging the constitutionality of a statute carries a heavy burden to overcome the presumption of constitutionality. Id. In a facial challenge, such as the one Carter makes, the "challenger must establish, beyond a reasonable doubt, that there are no possible applications or interpretations of the statute which would be constitutional." State v. Cole, 2003 WI 112, ¶30, 264

12

Wis. 2d 520, 665 N.W.2d 328 (quoting <u>State v. Wants</u>, 224 Wis. 2d 679, 690, 592 N.W.2d 645 (Ct. App. 1999)).[16]

¶21 Carter alleges that his counsel was ineffective for failing to contest the application of Act 84 to his discharge petition. Ineffective assistance of counsel is a mixed question of law and fact. <u>State v. Lombard</u>, 2004 WI 95, ¶46, 273 Wis. 2d 538, 684 N.W.2d 103. The circuit court's factual findings as to what counsel did and did not do are upheld unless clearly erroneous. <u>Id.</u> "Whether counsel's performance was ineffective is a question of law we review de novo." <u>Id.</u>

### III. ANALYSIS

¶22 The consolidated appeals of Hager and Carter present three issues for our review. First, we must determine how circuit courts are to apply the "would likely conclude" standard in Wis. Stat. § 980.09(2). Next, we consider whether § 980.09(2) violates the right to due process. Finally, we address whether Carter's counsel was ineffective for failing to contest retroactive application of Act 84 to Carter.

### A. Wisconsin Stat. § 980.09(2) Permits Circuit Courts to Consider the Entire Record, but Not to Weigh the Evidence Within It, to Determine Whether the Statutory Criteria for a Discharge Trial have been Met.

### 1. The changes made to Wis. Stat. § 980.09(2) by Act 84.

---

[16] This is in contrast to an as-applied challenge, which requires the court to determine whether a statute may be constitutionally applied to the challenger under the facts of the particular case. <u>State v. Hamdan</u>, 2003 WI 113, ¶43, 264 Wis. 2d 433, 665 N.W.2d 785.

13

¶23 In order to fully appreciate the changes made to Wis. Stat. § 980.09(2) by Act 84, we first set forth the statutory criteria for a discharge trial as they existed prior to the changes made to them by Act 84. Prior to those changes, the relevant portion of § 980.09 stated:

> The court shall deny the [discharge] petition under this section without a hearing unless the petition alleges facts from which the court or jury may conclude the person's condition has changed since the date of his or her initial commitment order so that the person does not meet the criteria for commitment as a sexually violent person.
>
> (2) The court . . . may hold a hearing to determine if it contains facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person. In determining under this subsection whether facts exist that might warrant such a conclusion, the court shall consider any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state.

Wis. Stat. § 980.09(1)-(2) (2005-06) (emphasis added).[17] We construed this as creating a two-part review process. Arends, 325 Wis. 2d 1, ¶3.

¶24 Wisconsin Stat. § 980.09(1) (2005-06) first required a paper review to determine whether the petition presented facts such that the trier of fact "may conclude" that the person no

---

[17] Even though Wis. Stat. § 980.09 (2005-06) does not contain any subsection (1), we will refer to the paragraph preceding subsection (2) as subsection (1), as we did in Arends. State v. Arends, 2010 WI 46, ¶23 n.16, 325 Wis. 2d 1, 784 N.W.2d 513.

14

longer fit the criteria for commitment, <u>Arends</u>, 325 Wis. 2d 1, ¶27, analogous to a motion to dismiss for failure to state a claim pursuant to Wis. Stat. § 802.06(2)(a)(6), <u>id.</u>, ¶29.

¶25 Second, Wis. Stat. § 980.09(2) (2005-06) required circuit courts to determine whether the record contained facts that could allow a trier of fact to find that the petitioner was no longer a sexually violent person. <u>Arends</u>, 325 Wis. 2d 1, ¶38. Circuit courts were not to weigh any evidence, but merely review the record for any facts in support of discharge. <u>Id.</u>, ¶40. We viewed this level of review as analogous to a motion to dismiss at the close of evidence pursuant to Wis. Stat. § 805.14(4). <u>Id.</u>, ¶42.

¶26 The legislature amended Wis. Stat. § 980.09 in 2013. 2013 Wis. Act 84. The current version states:

(1) The court shall deny the [discharge] petition under this section without a hearing unless the petition alleges facts from which the court or jury <u>would likely conclude the person's condition has changed</u> since the most recent order denying a petition for discharge after a hearing on the merits, or since the date of his or her initial commitment order if the person has never received a hearing on the merits of a discharge petition, so that the person no longer meets the criteria for commitment as a sexually violent person.

. . .

(2) In reviewing the petition, the court may hold a hearing to determine if the person's condition has sufficiently changed such that a court or jury <u>would likely conclude the person no longer meets the criteria for commitment as a sexually violent person.</u> In determining under this subsection whether the person's condition has sufficiently changed such that a court or jury would likely conclude that the person

15

no longer meets the criteria for commitment, the court may consider the record, including evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge, any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state.

Wis. Stat. § 980.09(1), (2) (2015-16) (emphasis added).

### 2. Circuit courts may consider the entire record when deciding whether the statutory criteria for a discharge trial have been met.

¶27 Hager and Carter argue that circuit courts are permitted to consider only those portions of the evidentiary record favorable to discharge when considering a petition for discharge from commitment filed pursuant to Wis. Stat. § 980.09. We disagree. The language of § 980.09(2) permits circuit courts to consider the entire record——not just the facts favorable to the petitioner——when determining whether the statutory criteria for a discharge trial have been met. The legislature set forth a broad scope of materials circuit courts may consider:

In determining . . . whether the person's condition has sufficiently changed such that a court or jury would likely conclude that the person no longer meets the criteria for commitment, the court may consider the record, including evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge, any current or past reports filed under § 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supported documentation provided by the person or the state.

Wis. Stat. § 980.09(2). The result of a plain reading of "the court may consider the record" is that courts are free to review everything in the record, no matter whether it is beneficial or

16

detrimental to the petitioner's cause. In order to illustrate the breadth of materials circuit courts may consider, the legislature included a host of examples of such materials, which by their nature will contain facts detrimental to the petitioner, including (1) "evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge"; (2) "any current or past reports filed under § 980.07"; (3) "relevant facts . . . in the state's written response"; (4) "arguments of counsel"; and (5) "any supporting documentation provided by . . . the state." Id. If, as Hager and Carter contend, circuit courts were limited to considering the facts favorable to the petitioner, the legislature would have had no reason to list these materials as examples of what courts may consider during their review of the discharge petition. Accordingly, we reject Hager and Carter's proposed interpretation because we conclude that it would impermissibly render this language surplusage. Kalal, 271 Wis. 2d 633, ¶46.

   3. We conclude that circuit courts may not weigh the evidence in determining whether the statutory criteria for a discharge trial have been met.

¶28 Hager and Carter argue that circuit courts may not weigh the evidence in favor of a discharge petition against the evidence opposed to the petition when determining whether the

17

committed person has met his burden of production. We agree.[18] The court of appeals correctly held that Act 84 does not permit, much less require, circuit courts to weigh the evidence when they consider whether the statutory criteria for a discharge trial have been met. As we held in Arends, if the legislature wanted circuit courts to weigh evidence, it could use appropriate terms of art such as "probable cause" or "preponderance of the evidence" to so indicate. Arends, 325 Wis. 2d 1, ¶37. It did not use such terms in previous iterations of Wis. Stat. § 980.09(2), and it did not elect to do so in Act 84, either.

¶29 The legislature did not provide a definition for what it meant when it directed circuit courts to "consider" the record. Such being the case, we may ascertain the term's plain and ordinary meaning through sources such as dictionaries. Kalal, 271 Wis. 2d 633, ¶¶45, 53. "Consider" has many dictionary definitions, but all coalesce around the concept of careful or attentive examination. See, e.g., Black's Law

_____

[18] We note that in its briefs to us, the State withdrew its argument that Act 84 requires circuit courts to weigh the evidence, and now concedes that Wis. Stat. § 980.09(2) does not allow circuit courts to weigh the evidence. We choose to address this issue because to do so is helpful to our analysis of the proper application of § 980.09(2). See State v. Hunt, 2014 WI 102, ¶42 n.11, 360 Wis. 2d 576, 851 N.W.2d 434 ("we are not bound by a party's concession of law").

Dictionary 306 (6th ed. 1990)[19] ("To fix the mind on, with a view to careful examination; to examine"); The New Century Dictionary 310 (1952) ("To view attentively, or scrutinize; also, to contemplate mentally").

¶30 This leads us to the conclusion that when they review petitions for discharge, courts are to carefully examine, but not weigh, those portions of the record they deem helpful to their consideration of the petition, including facts both favorable as well as unfavorable to the petitioner. That is, circuit courts cannot "accept one version of facts, [and] reject another." State v. Stietz, 2017 WI 58, ¶18, 375 Wis. 2d 572, 895 N.W.2d 796 (quoting State v. Mendoza, 80 Wis. 2d 122, 152, 258 N.W.2d 260 (1977)). However, as we recognized in Arends, courts need not "take every document a party submits at face value" but should scrutinize the submissions to ensure they contain facts "upon which a trier of fact could reasonably rely." Arends, 325 Wis. 2d 1, ¶39 (emphasis added).

¶31 We note that by holding that the plain language of Wis. Stat. § 980.09(2) does not allow circuit courts to weigh the evidence, we not only correctly apply the plain meaning of the statute, we also avoid constitutional conflict. This is so because the effect of allowing circuit courts to weigh the

---

[19] More recent editions of Black's Law Dictionary do not contain a definition for "consider." See Black's Law Dictionary 370 (10th ed. 2014); Black's Law Dictionary 347 (9th ed. 2009); Black's Law Dictionary 324 (8th ed. 2004); Black's Law Dictionary 300 (7th ed. 1999).

19

evidence would be to impermissibly shift the burden of persuasion to the committed person to prove he is no longer a sexually violent person. See Arends, 325 Wis. 2d 1, ¶¶40-41; cf State v. West, 2011 WI 83, ¶81, 336 Wis. 2d 578, 800 N.W.2d 929 (construing supervised release statute to place burden of persuasion on the committed person because the statute requires circuit courts to weigh evidence and make certain factual findings to grant supervised release). Shifting the burden of persuasion for discharge to the committed person is impermissible because to do so would violate the committed person's right to due process. See infra, ¶¶41-48. While avoidance of constitutional conflict does not drive our reading of the statute, where we can reasonably adopt a saving construction of a statute to avoid a constitutional conflict, we do so. Milwaukee Branch of NAACP v. Walker, 2014 WI 98, ¶¶63-64, 357 Wis. 2d 469, 851 N.W.2d 262 (citing McConnell v. Fed. Election Comm'n, 540 U.S. 93, 180 (2003), and Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 503 (2001)). Therefore, our construction of § 980.09(2) to preclude circuit courts from weighing the evidence is commanded by both the plain language of the statute and the constitution.

### 4. Applying Wis. Stat. § 980.09(2)

#### a. Application of Wis. Stat. § 980.09(2) to Hager

¶32 Both the court of appeals and the circuit court applied an incorrect interpretation of Wis. Stat. § 980.09(2) to Hager's petition. The court of appeals erred in concluding that

20

courts may consider only the evidence in the record favorable to the petitioner. The circuit court erred when it "weigh[ed] [the] reports." Though we could independently consider the record to determine whether a factfinder "would likely conclude" that Hager no longer meets the criteria for commitment, we determine that the better course as to Hager is to remand this matter to the circuit court "so that it may have an opportunity to conduct a review under § 980.09(2) following the procedures and applying the standards we announce today." Arends, 325 Wis. 2d 1, ¶48.

b. Application of Wis. Stat. § 980.09(2) to Carter

¶33 In Carter's case, we see no need for remand, as the circuit court properly applied Wis. Stat. § 980.09(2) to Carter's discharge petition. Our consideration of the record satisfies us that the circuit court carefully examined, but did not weigh, those portions of the record it deemed helpful to its consideration of the petition, including facts both favorable as well as unfavorable to the petitioner.

¶34 First, it considered "the most recent reports, and generally, the file as well." Next, it did not weigh the evidence. The circuit court did not "accept one version of facts, [and] reject another." Stietz, 375 Wis. 2d 572, ¶18. Rather, it concluded that the lack of supporting analysis for Dr. Lytton's conclusions meant that a factfinder could not "reasonably rely" on the report in reaching its conclusion. Arends, 325 Wis. 2d 1, ¶39.

21

B.  Wisconsin Stat. § 980.09(2) Does Not Violate the Right to
Due Process of Law.

¶35  Carter argues that Wis. Stat. § 980.09(2) violates the right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution[20] and Article I, Section 1 of the Wisconsin Constitution.[21]  He argues that "Act 84 pushes [Chapter 980] . . . down the slippery slope of unconstitutional preventative detention and violates due process" by shifting the burden of persuasion to the petitioner to prove he is no longer a sexually violent person.  In essence, Carter argues, Act 84 makes "discharge without approval from the State practically impossible," unless we adopt the court of appeals' construction in Hager.

¶36  The State argues that rational basis scrutiny applies because the procedures for obtaining a discharge trial do not "implicate[] a fundamental right or discriminate[] against a protected class."  Carter argues that "[a] strict scrutiny

_____

[20] The Fourteenth Amendment to the United States constitution states, in relevant part:  "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV, § 1.

[21] Article I, Section 1 of the Wisconsin Constitution states:  "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."  The protections afforded by Article I, Section 1 of the Wisconsin Constitution are the "substantial equivalent" to those afforded by the Fourteenth Amendment to the United States Constitution.  Neiman v. Am. Nat'l Prop. & Cas. Co., 2000 WI 83, ¶8, 236 Wis. 2d 411, 613 N.W.2d 160.

analysis is appropriate in Chapter 980 cases because of the liberty interest involved."

¶37 We agree with the State and conclude that rational basis review applies. Involuntary commitments in general implicate the fundamental right to be free from bodily restraint. Alger, 360 Wis. 2d 193, ¶44. However, the procedures used in commitment proceedings do not implicate a fundamental right. See id. (citing Milwaukee Cty. v. Mary F.-R., 2013 WI 92, ¶38, 351 Wis. 2d 273, 839 N.W.2d 581).

¶38 For example, in Alger, the committed person alleged that he was entitled to application of the amended version of Wis. Stat. § 907.02, which regulates the admissibility of expert testimony, in his discharge trial. Id., ¶2. We determined that he was not entitled to application of the amended statute. Id., ¶38. The committed person further alleged that his right to due process required applying the amended version of the statute, and that it implicated a fundamental right triggering strict scrutiny. Id., ¶40. We held that "[a]lthough Chapter 980 involuntary commitment implicates the right to freedom from bodily restraint, the availability of the [amended version of § 907.02] in a Chapter 980 proceeding does not implicate that right so as to trigger strict scrutiny." Id., ¶44. Consequently, "[t]here is no right to a particular evidentiary [standard] in a Chapter 980 discharge petition trial." Id.

¶39 Similarly, the burden of production required to obtain a discharge trial is a procedural matter that does not implicate the committed person's fundamental right to freedom from bodily

23

restraint. Consequently, we apply rational basis review as we did in Alger. Under rational basis review, legislation is constitutional "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Id., ¶39 (quoting State v. Smith, 2010 WI 16, ¶12, 323 Wis. 2d 377, 780 N.W.2d 90).

¶40 The right to due process includes the right to both substantive due process as well as procedural due process. Substantive due process protects individuals from government action that "abridges the Constitution's fundamental constraints upon the content of what government may do to people under the guise of law" even if the action "adher[es] to the forms of law." State v. Laxton, 2002 WI 82, ¶10 n.8, 254 Wis. 2d 185, 647 N.W.2d 784 (quoting Reginald D. v. State, 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995)). Procedural due process requires that government action "be implemented in a fair manner." Id. (citing United States v. Salerno, 481 U.S. 739 (1987)).

### 1. Act 84 does not violate the right to substantive due process.

¶41 The right to substantive due process requires that the State carry the burden of persuasion at the initial commitment trial and at every subsequent discharge trial. Addington v. Texas, 441 U.S. 418, 431-32 (1979); Foucha v. Louisiana, 504 U.S. 71, 81-82 (1992). The right to substantive due process is not violated, however, if committed persons carry a burden of production to ensure that a discharge trial would be worthwhile. State v. Post, 197 Wis. 2d 279, 327, 541 N.W.2d 115 (1995).

24

¶42 We have recognized that Chapter 980 "passes constitutional muster because the physical confinement of the individual is linked to the dangerousness of the committed person." State v. Rachel, 2002 WI 81, ¶66, 254 Wis. 2d 215, 657 N.W.2d 762; see also Combs, 295 Wis. 2d 457, ¶28 (citing Post, 197 Wis. 2d at 307 n.14, 313-16, 325-27) (internal quotes omitted) ("[P]eriodic re-examination and . . . hearing[s] for discharge . . . are among the protections that the supreme court has considered significant in concluding that Wis. Stat. ch. 980 does not violate . . . the right to due process."). An important consideration in this regard is the availability of various "methods . . . for regularly determining the dangerousness of the person and reducing or removing the physical restrictions when the person is less or no longer dangerous." Rachel, 254 Wis. 2d 215, ¶66.

¶43 The fundamental structure of Wis. Stat. § 980.09——which we have consistently held comports with due process——was not changed by Act 84. See, e.g., Post, 197 Wis. 2d at 327. Under both the Act 84 standard and the prior standard, the committed person receives a discharge trial only upon satisfying a burden of production; if the burden of production is met, a discharge trial is conducted where the State must prove by clear and convincing evidence that the person continues to meet the three criteria for commitment. Compare Wis. Stat. § 980.09 (2005-06) with Wis. Stat. § 980.09 (2015-16). Because we conclude that § 980.09(2) does not permit circuit courts to weigh the evidence, Act 84 has not shifted the burden of

25

persuasion to the committed person, as the legislatively-imposed burden on the committed person is not to convince the factfinder that he is no longer sexually dangerous. Rather, his burden is to demonstrate to the circuit court that he is likely to succeed at a discharge trial. "The principles of due process are not violated if a burden of production——as opposed to a burden of persuasion——is placed on the" committed person to present "some" evidence that he will prevail at a discharge trial. State v. Shulz, 102 Wis. 2d 423, 430, 307 N.W.2d 151 (1981) (applying doctrine in context of affirmative defenses in criminal proceedings).

¶44 The changes made by Act 84 are rationally related to at least two legitimate government interests: (1) protection of the public, State ex rel. Marberry v. Macht, 2003 WI 79, ¶30, 262 Wis. 2d 720, 665 N.W.2d 155; and (2) conserving public resources, see Arends, 325 Wis. 2d 1, ¶22. Act 84 is reasonably related to protecting the public because it ensures a discharge trial only when a committed person presents sufficient facts to show that his condition has changed; as we identified in Marberry, "[r]elease of a [person committed pursuant to Chapter] 980 . . . whose dangerousness or mental disorder has not abated [does not] serve[] to protect the public . . . ." Marberry, 262 Wis. 2d 720, ¶30 (quoting State ex rel. Marberry v. Macht, 2002 WI App 133, ¶39, 254 Wis. 2d 690, 548 N.W.2d 522 (Brown, J., concurring in part, dissenting in part)). Further, Act 84 is

26

reasonably related to conserving public resources because it ensures that a discharge trial occurs only when the committed person demonstrates a likelihood of success in a discharge trial.

2. Act 84 does not violate the right to procedural due process.

¶45 Procedural due process claims are analyzed by balancing three factors:

> (1) the private interest that will be affected by the state action;
>
> (2) the risk of an erroneous deprivation of the private interest through the procedures utilized and the probable value of added or substitute procedural safeguards; and
>
> (3) the state's interest, which includes the function involved and the fiscal and administrative burdens that the added or substitute procedural requirements would impose.

State v. Kaminski, 2009 WI App 175, ¶13, 322 Wis. 2d 653, 777 N.W.2d 654 (quoting Patterson v. Bd. of Regents, 119 Wis. 2d 570, 580-81, 350 N.W.2d 612 (1984)).

¶46 No party disputes that the private interest of liberty from physical restraint is a substantial interest. See id., ("[The committed person] has correctly identified the strong liberty interest implicated by Wis. Stat. ch. 980 . . . .").

¶47 The risk of erroneous deprivation of liberty is slight because the standard ensures that a committed person receives a discharge trial when new facts are present that provide a likelihood of success at a discharge trial. The only way to

27

eliminate all risk of erroneous deprivation is to grant discharge trials on request no matter the facts alleged; however, this would infringe the State's interests in protecting the public from sexually violent offenders and preserving resources. Marberry, 262 Wis. 2d 720, ¶30 (recognizing that protecting the public from sexually violent persons is a legitimate government interest); State v. Velez, 224 Wis. 2d 1, 12, 589 N.W.2d 9 (1999) (recognizing that "conserve[ing] scarce judicial resources" is a legitimate government interest). Act 84 strikes a reasonable balance between ensuring committed persons are released when they are no longer sexually dangerous, protecting the public, and preserving scarce judicial resources by ensuring discharge trials occur only when the committed person is likely to succeed.

¶48 In light of the foregoing, we conclude that the requirements of an initial burden of production imposed upon Carter by § 980.09(2) do not violate the right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Wisconsin Constitution.

C. Carter's Counsel did not Perform Deficiently by Failing to Contest Application of Act 84 to Carter.

¶49 Carter alleges that his counsel was ineffective because he did not challenge the application of Act 84 to Carter's discharge petition, even though the petition was filed before Act 84's effective date.

28

¶50 In order to prevail on his ineffective assistance of counsel claim, Carter must prove that his counsel performed deficiently and that the deficiency prejudiced him. State v. Lombard, 2004 WI 95, ¶49, 273 Wis. 2d 538, 684 N.W.2d 103 (applying Strickland v. Washington, 466 U.S. 668, 687 (1984), to Chapter 980 commitment). If Carter fails to prove either deficient performance or prejudice, we need not consider the other. Id., ¶50.

¶51 Though statutes generally apply prospectively, procedural and remedial statutes may apply retroactively. Trinity Petroleum, Inc. v. Scott Oil Co., 2007 WI 88, ¶40, 302 Wis. 2d 299, 735 N.W.2d 1. We determine whether a statute applies retroactively in three steps. Id., ¶¶36-54. First, we examine the text of the statute for an express statement concerning retroactivity. Id., ¶36. If the statute does not contain an express statement concerning retroactivity, we determine whether the statute is procedural or substantive and apply a presumption of retroactivity to procedural statutes. Id., ¶40. If a statute is procedural, we determine whether one of three exceptions to retroactivity overcomes the presumption: interference with a vested right, interference with a contractual right, or imposition of an unreasonable burden. Id., ¶¶53-54. We conclude that Act 84 applies retroactively because it includes within it no statements concerning its retroactivity; the Act is procedural in nature; and none of the three exceptions to the presumption of retroactive application of procedural statutes are present. Accordingly, we hold that

29

Act 84 applies retroactively to Carter. Because Act 84 applies to Carter, his counsel could not have been deficient for failing to contest the retroactive application of Act 84 before the circuit court.

### 1. Act 84 contains no language concerning retroactive application.

¶52 We look first to the language of Act 84. Trinity Petroleum, 302 Wis. 2d 299, ¶36. We conclude that Act 84 does not contain any language concerning its retroactive application. See 2013 Wis. Act 84.

### 2. Act 84 is procedural.

¶53 Next, we consider whether Act 84 is substantive or procedural. Trinity Petroleum, 302 Wis. 2d 299, ¶39. If it is procedural, the presumption of retroactivity attaches; if it is substantive, the statute is presumed prospective. Id. Procedural statutes "prescribe[] the method . . . used in enforcing a right or remedy" whereas substantive statutes "create[], define[], and regulate[] rights and obligations." Id., ¶41 & n.25 (citing Betthauser v. Med. Protective Co., 172 Wis. 2d 141, 147-48, 493 N.W.2d 40 (1992)).

¶54 Carter concedes that Act 84 is procedural. We agree. The substantive right at issue is the right to "an adversary hearing at which the State must prove by clear and convincing evidence that he [continues to be] demonstrably dangerous to the community." Foucha, 504 U.S. at 81. The substantive right is not to a certain burden of production to obtain the hearing described in Foucha. Post, 197 Wis. 2d at 327. Act 84 changes

30

the method used to determine whether he is entitled to a discharge trial, but does not change the nature of the discharge trial itself, and so is procedural in nature.

### 3. None of the exceptions to retroactivity overcome the presumption of retroactivity for procedural statutes.

#### a. Carter does not have a vested right to a discharge trial.

¶55 We turn next to a consideration of whether any of the three exceptions to retroactive application of a procedural statute overcome the presumption of retroactivity. Id., ¶53. The first exception precludes retroactive application of a procedural statute if such application would interfere with a vested right. Id., ¶54. A right becomes vested when it is "presently legally enforceable . . . not dependent on uncertain future events." Lands' End, Inc. v. City of Dodgeville, 2016 WI 64, ¶68, 370 Wis. 2d 500, 881 N.W.2d 702.

¶56 Carter has a constitutional right to a discharge trial "under the appropriate circumstances." State v. Richard, 2014 WI App 28, ¶17, 353 Wis. 2d 219, 844 N.W.2d 370. Indeed, this ability to obtain a discharge trial is fundamental to Chapter 980's constitutionality. Id. However, a right cannot be vested if contingent on some uncertain future event. Lands' End, 370 Wis. 2d 500, ¶50.

¶57 Lands' End is instructive. In that case, Lands' End made a statutory offer of settlement for $724,000 pursuant to

31

Wis. Stat. § 807.01(4) (2009-10),[22] which the defendant rejected. Id., ¶14. Lands' End eventually recovered $724,292.68. Id., ¶16. Lands' End was thus entitled to interest on its judgment pursuant to § 807.01(4) because it recovered more than was offered in the statutory offer of settlement. Id., ¶17. The question was whether Lands' End was entitled to 12 percent interest pursuant to Wis. Stat. § 807.01(4) (2009-2010), which was in effect when Lands' End made its offer of settlement, or one percent plus prime pursuant to Wis. Stat. § 807.01(4) (2013-14), which was in effect when judgment was entered in favor of Lands' End. See id., ¶¶17-18. We held that Lands' End was entitled to interest at the rate of one percent plus prime because the right to interest did not vest until a judgment exceeding the statutory offer was entered. Id., ¶72. That is, the right to interest on a judgment exceeding the statutory offer is contingent upon such a judgment being entered. Id.

¶58 Similarly, Carter's right to a discharge trial was contingent on his meeting the burden of production set forth in Wis. Stat. § 980.09(2). We agree with the court of appeals that satisfying the burden of production as set out in § 980.09(2) constitutes the "appropriate circumstances" entitling a

---

[22] Wis. Stat. § 807.01 encourages settlement in civil actions by providing incentives for parties to make and accept settlement offers. Subsection four, at issue in Lands' End, Inc. v. City of Dodgeville, 2016 WI 64, 370 Wis. 2d 500, 881 N.W.2d 702, awards interest from the date of a statutory offer of settlement if the prevailing party recovers more than was offered. § 807.01(4).

32

petitioner to a discharge trial. Carter, 373 Wis. 2d 722, ¶18. Thus, the right could not vest until Carter met that burden of production, which he has not done.

### b. Carter does not have a contractual right to a discharge trial.

¶59 The second exception to retroactive application of a procedural statute is whether it interferes with a contractual right. Trinity Petroleum, 302 Wis. 2d 299, ¶53. No party claims that Carter had any contractual right to a discharge trial, and we cannot find any basis to conclude that he does.

### c. Carter never articulates how retroactive application of Act 84 unreasonably burdens him.

¶60 The final exception to retroactive application of a procedural statute applies where a party faces an unreasonable burden if required to comply with the new statute. Id. Carter never articulates what "burden" he believes was imposed, much less an unreasonable one. Carter's argument on this exception is a single sentence, stating:

> Carter submits the new burden imposed on him to warrant a discharge trial ("allegations of facts" or "change in a person's condition" from the record as a whole from which the court or jury would "likely" conclude the person's condition has changed since the most recent order denying a petition for discharge after a hearing on the merits) would be an unreasonable one.

Carter never articulates what about retroactive application of Act 84 is an unreasonable burden on him. Instead, he argues that the enactment of Act 84 itself is the unreasonable burden. The mere application of a statute that provides additional

33

procedural hurdles to achieve a desired end is not an unreasonable burden. See Ten Mile Invs., LLC v. Sherman, 2007 WI App 253, ¶11, 306 Wis. 2d 799, 743 N.W.2d 442.

¶61 Furthermore, whether the aggrieved party could have complied with the new statute is an important factor in determining whether retroactive application of a statute imposes an unreasonable burden. Id.; Modica v. Verhulst, 195 Wis. 2d 633, 645, 536 N.W.2d 466 (Ct. App. 1995) (citing Mosing v. Hagen, 33 Wis. 2d 636, 148 N.W.2d 92 (1967)) ("Such application . . . did not impose an unreasonable burden on the plaintiff since the plaintiff could have complied with the new statute."); see also Trinity Petroleum, 302 Wis. 2d 299, ¶¶85, 89, 92 (remanding for circuit court to make findings of fact and conclusions of law on the issue of unreasonable burden after noting that whether the aggrieved party could have complied with the new statute was in dispute). Our review of the record demonstrates that Carter not only could have, but did in fact tailor his efforts to obtain a discharge trial around compliance with Act 84. This is demonstrated by the fact that Carter's attorney argued Carter's case with the express understanding that Act 84 applied to Carter's case. It is because of this express understanding, as well as the fact that Carter never develops any argument to the contrary, that we hold compliance with Act 84 would not have placed an unreasonable burden on Carter. See State v. Robinson, 2014 WI 35, ¶50, 354 Wis. 2d 351, 847 N.W.2d 352 (quoted source omitted) ("Typically,

34

appellate courts do not take it upon themselves to create and develop arguments on a party's behalf.").

¶62 Based upon the foregoing, we conclude that none of the enumerated exceptions to retroactivity apply. Thus, the presumption of retroactivity controls and Act 84 applies retroactively to Carter's case. Because Carter's counsel could not have been deficient for failing to bring a meritless motion, Carter's ineffective assistance claim fails. State v. Allen, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245.

## IV. CONCLUSION

¶63 As to Hager, we reverse the decision of the court of appeals and remand the matter to the circuit court with directions to apply the statute in accordance with the analysis in this opinion to determine whether Hager is entitled to a discharge hearing. As to Carter, we affirm the decision of the court of appeals because the circuit court applied the statute correctly in rejecting Carter's request for a discharge hearing.

¶64 We hold as to both Hager and Carter that the court of appeals erred in concluding that Wis. Stat. § 980.09(2) limits circuit courts to considering only the evidence favorable to petitions for discharge. We hold that circuit courts are to carefully examine, but not weigh, those portions of the record they deem helpful to their consideration of the petition, which may include facts both favorable as well as unfavorable to the petitioner.

¶65 We further hold that Wis. Stat. § 980.09(2) does not violate the constitutional right to due process of law as

35

guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 1 of the Wisconsin Constitution, and furthermore, Carter's counsel was not ineffective for failing to challenge retroactive application of Act 84 to Carter.

*By the Court.*—The decision of the court of appeals in <u>State v. Hager</u> is reversed and cause remanded to the circuit court with directions; the decision of the court of appeals in <u>State v. Carter</u> is affirmed.

¶66 DANIEL KELLY, J. *(concurring)*. I join the court's opinion, except to the extent that it holds the court may not "weigh" evidence when it reviews a petition for discharge from a chapter 980 commitment. Honoring that proscription, I think, is incompatible with the prescription that "circuit courts are to carefully examine . . . those portions of the record they deem helpful to their consideration of the petition, which may include facts both favorable as well as unfavorable to the petitioner." Majority op., ¶4. Contrary to the court's conclusion, I believe the 2013 amendments to Wis. Stat. § 980.09(2) not only allow weighing, they require it.

¶67 The parts of the statute in which we are immediately interested direct how courts are to review discharge petitions in two important ways. The first addresses the information the court is to examine. The second describes how the court is to analyze that information. This case is here because, in 2013, the legislature amended how the court is to address each of these topics.

¶68 As for the first directive, Wis. Stat. § 980.09(2) now says the court may "consider" a large universe of information:

> [T]he court may consider the record, including evidence introduced at the initial commitment trial or the most recent trial on a petition for discharge, any current or past reports filed under s. 980.07, relevant facts in the petition and in the state's written response, arguments of counsel, and any supporting documentation provided by the person or the state.

1

Wis. Stat. § 980.02(2).[1] The court concluded that "[t]he result of a plain reading of 'the court may consider the record' is that courts are free to review everything in the record, no matter whether it is beneficial or detrimental to the petitioner's cause." Majority op., ¶27. I agree that the purpose of the "may consider" directive is to identify the information the court is supposed to analyze.

¶69 The statute's second directive instructs the court to analyze the information described by the first directive. The purpose of the analysis is to determine what the jury would likely conclude from that information: "If the court determines that the record contains facts from which a court or jury <u>would likely conclude</u> the person no longer meets the criteria for commitment, the court shall set the matter for trial." Wis. Stat. § 980.09(2) (emphasis added).[2] In the prior version of this statute, the standard was different. It used to be that the court would determine whether the petitioner had identified "facts from which the court or jury <u>may conclude</u> that the person does not meet the criteria for commitment as a sexually violent person." Wis. Stat. § 980.09(3) (2011-12) (emphasis added). So our task here was to explain how a reviewing court is supposed

---

[1] Prior to 2013, this provision directed the court to consider only a subset of the record. <u>See</u> Wis. Stat. § 980.09(2) (2011-12).

[2] Prior to the 2013 amendments, the court was to determine only whether the petitioner had identified "facts from which the court or jury may conclude that the person does not meet the criteria for commitment as a sexually violent person." Wis. Stat. § 980.09(3) (2011-12).

to apply the new "would likely conclude" standard to the facts identified by the first directive.

¶70 Except we didn't analyze this change at all. Instead, we went back to the first directive to consider what it means to "consider" the record. We concluded it means "examine." I think that's a perfectly suitable synonym for "consider," but neither term addresses itself to the purpose of that scrutiny. To what end is one to examine the evidence? More to the point, what is one to do when the examination reveals that some of the evidence favors the petitioner and some of it does not? Certainly, the instruction that courts are to examine "facts both favorable as well as unfavorable to the petitioner" must mean more than acknowledging that one part of the record is in competition with another.

¶71 The statute says the purpose of our examination is to determine what a fact-finder would likely conclude from the evidence of record. The court says nothing about how to conduct this analysis except that we are not to "weigh" the evidence. Majority op., ¶28 ("Hager and Carter argue that circuit courts may not weigh the evidence in favor of a discharge petition against the evidence opposed to the petition when determining whether the committed person has met his burden of production. We agree."). Part of the reason the court reached this conclusion is it saw no legislative authorization to do so:

> As we held in Arends, if the legislature wanted circuit courts to weigh evidence, it could use appropriate terms of art such as "probable cause" or "preponderance of the evidence" to so indicate. It did not use such terms in previous iterations of Wis.

3

Stat. § 980.09(2), and it did not elect to do so in Act 84, either.

Id., ¶28 (internal citation omitted).

¶72 I disagree——the legislature did use such a term. In fact, that's the whole point of the newly-formulated second directive. We are supposed to determine whether, based on the evidence of record (both pro and con, according to the court), the fact-finder "would likely conclude" the petitioner no longer meets the criteria for commitment. "Likely" means "probable," one of the very terms the court said indicates a legislative direction to weigh evidence. Webster's Third New International Dictionary 1310 (1986) (defining "likely" in first definition as "of such a nature or so circumstanced as to make something probable").

¶73 The other reason the court believes the evidence may not be weighed is a legitimate concern for the petitioner's due process rights. The court says that "allowing circuit courts to weigh the evidence . . . shift[s] the burden of persuasion to the committed person to prove he is no longer a sexually violent person." Majority op., ¶31 (citation omitted). And "[s]hifting the burden of persuasion for discharge to the committed person is impermissible because to do so would violate the committed person's right to due process." Id. (citation omitted).

¶74 But the simple act of weighing, by itself, does not require the committed person to prove he is no longer sexually violent. "Weighing" refers to the process of resolving various elements of evidence that exist in tension. Whether the petitioner must prove he is no longer dangerous is not a

4

function of weighing, but of the standard the weighing must satisfy. If the statute required the court to find that the "weighed" evidence satisfied a "preponderance of the evidence" standard, it would be fair to say the burden had shifted to the petitioner to prove he is no longer dangerous.

¶75 But Wis. Stat. § 980.09(2) does not contain that standard. It says, instead, that the court must determine whether the fact-finder would merely be likely to find the petitioner no longer meets the criteria for commitment. As discussed above, "likely" means "probable," and we have a fair amount of experience in evaluating whether a probability warrants a new trial. In the "ineffective assistance of counsel" context, Strickland v. Washington requires a new trial when counsel's performance is both deficient and prejudicial. See 466 U.S. 668, 687 (1984). We measure the "prejudice" prong of the test by asking whether it is "reasonably probable" that the result of the trial would have been different absent counsel's deficient performance. See id. at 694. We apply that test even when the claimed deficiency is the failure to introduce helpful evidence or object to harmful evidence. See e.g., State v. Jenkins, 2014 WI 59, ¶¶59-61, 355 Wis. 2d 180, 848 N.W.2d 786 (holding "that the failure to call Jones as a witness at trial to give testimony contradictory to that of the State's eyewitness had a reasonable probability of affecting the result of the case" and was, therefore, prejudicial to the defendant); State v. Krueger, 2008 WI App 162, ¶¶17-18, 314 Wis. 2d 605, 762 N.W.2d 114 (holding that counsel's deficient

5

performance in failing to object to testimony of a State's witness prejudiced defendant because there was a "reasonable probability that, but for trial counsel's error, the jury would have had a reasonable doubt respecting guilt"); State v. Jeannie M.P., 2005 WI App 183, ¶27, 286 Wis. 2d 721, 703 N.W.2d 694 (holding "that trial counsel's failure to investigate and present at trial facts that would cast doubt on the credibility of the State's principal witnesses" produced a "reasonable probability [that] the jury would have acquitted the defendant," thus constituting prejudice).

¶76 Conducting the prejudice analysis in each of these cases required the court to evaluate the effect of the disputed evidence on the result of the trial. That is to say, the court had to weigh the evidence to determine whether its inclusion or exclusion would have been likely to bring about a different result. We have never said that the reasonable probability standard requires the defendant to prove the result would be different. He must only demonstrate there is a reasonable probability it would be different. There is no reason we cannot conduct the same analysis here, so long as the standard against which we measure the weighed evidence does not exceed the legislatively prescribed "likelihood."

¶77 Therefore, because the legislature amended Wis. Stat. § 980.09(2) to require the court to determine whether the evidence of record demonstrates a likelihood (that is, a reasonable probability) that a fact-finder would find the petitioner no longer meets the criteria for commitment, I

6

conclude that the court is to weigh the evidence of record. And because demonstrating a reasonable probability does not shift the burden of persuasion to the petitioner, I conclude there is no due process violation. For these reasons, I join the court's opinion except with respect to its conclusion that § 980.09(2) prevents the court from weighing conflicting evidence.

¶78 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

¶79 SHIRLEY S. ABRAHAMSON, J. *(dissenting).* The majority addresses a myriad of issues raised by amendments to Chapter 980 of the statutes. Although I largely disagree with the majority's views of the constitutionality and legality of the amendments, I confine my dissent to the majority's instructions about implementing §§ 21 and 23 of the 2013 Wis. Act 84 amendments to Wis. Stat. § 980.09.

¶80 The majority delivers a useless, unworkable, and potentially unconstitutional standard for §§ 21 and 23 of the 2013 Wis. Act 84 amendments to Wis. Stat. § 980.09 that is not helpful to the bench, bar, or litigants.

¶81 The majority concludes that the 2013 amendments to Wis. Stat. § 980.09 require that a circuit court "<u>carefully examine, but not weigh</u>" the evidence in determining whether a jury "would likely conclude" that a petitioner's condition has changed such that the petitioner no longer meets the statutory criteria for commitment and should get a hearing. Majority op., ¶4 (emphasis added). The majority describes the amendments as simply increasing the petitioner's burden of production——instead of being required to produce a quantum of evidence such that a reasonable factfinder <u>could</u> find in the petitioner's favor, the petitioner must now produce a larger quantum of evidence such that a reasonable factfinder <u>would likely</u> find in the petitioner's favor.

¶82 How can a court determine what a jury "would likely conclude" without weighing the evidence favorable to discharge

1

against the evidence unfavorable to discharge? Moreover, how is this inquiry meaningfully different from a burden of persuasion by a preponderance of evidence? Convincing a factfinder that a proposition is more likely true than not true is literally what it means to carry one's burden of persuasion by the preponderance of the evidence. In the context of Chapter 980, the proposition that a petitioner must convince a judge is more likely true than not true is that a jury will find in petitioner's favor at a discharge hearing.

¶83 The majority's interpretation of the amended statute creates additional problems. If determining whether a jury "would likely conclude" in favor of petitioner is simply an increase in the petitioner's burden of production, could the legislature raise the burden of production further? For example, what principle would prevent the legislature from conditioning a Chapter 980 discharge hearing on a petitioner's burden to first produce evidence such that it is beyond a reasonable doubt that a jury will conclude in favor of petitioner? Under the majority's interpretation, is it possible to avoid weighing the evidence under a more stringent burden of production? At what point under the majority's interpretation will a burden of production become so onerous as to necessitate the weighing of evidence and constitute a burden of persuasion?

¶84 Rather than face reality and impart helpful direction to the bench and bar (or simply acknowledge that the amended statute requires the weighing of evidence and is therefore constitutionally suspect), the majority merely directs judges to

2

"consider" or "carefully examine" (but not weigh) the allegations in the filings and the evidence in the record. Majority op., ¶¶4, 29-30, 64.

¶85 In order to comply with the majority's useless direction to carefully examine but not weigh the evidence, the circuit court will simply use the words "consider" or "carefully examine" rather than the word "weigh" when applying the amended statute. Such a subterfuge is not helpful in understanding or applying the statute. If the amended statute truly does not necessitate the weighing of evidence, then the majority should better explain how a judge is to accomplish what Wis. Stat. § 980.09 now requires without weighing evidence.

¶86 For the reasons set forth, I dissent.

¶87 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.