COURT OF APPEALS
DECISION
DATED AND FILED

June 26, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP487**

Cir. Ct. No. **2008CI2**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

IN RE THE COMMITMENT OF BRIAN THRELKELD:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

BRIAN THRELKELD,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Kenosha County: ANTHONY G. MILISAUSKAS, Judge. *Affirmed.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Brian Threlkeld appeals an order denying his WIS. STAT. ch. 980 (2021-22)[1] petition for discharge from commitment as a sexually violent person.  Threlkeld argues the evidence from the hearing on the petition was insufficient to establish by clear and convincing evidence that it was more likely than not that he would commit another act of sexual violence.  We affirm.

¶2     In February 2022, Threlkeld filed a petition for discharge from commitment.  The circuit court held a trial on the petition.  At trial, in order to continue Threlkeld's involuntary commitment, the State was required to prove by clear and convincing evidence:  (1) Threlkeld had been convicted of a sexually violent offense; (2) Threlkeld had a qualifying mental health disorder under WIS. STAT. § 980.01(2); and (3) it was more likely than not that he would commit another act of sexual violence.  *See State v. Hager*, 2018 WI 40, ¶7 n.7, 381 Wis. 2d 74, 911 N.W.2d 17.

¶3     At the beginning of the trial, instead of presenting testimony from Drs. Sharon Kelley, Donn Kolbeck, and James Tomony, the parties stipulated to the veracity of their reports.  The parties also stipulated to Threlkeld's underlying conviction and to the results of a recent polygraph examination.  The circuit court received the associated exhibits and reviewed them.  Threlkeld elected not to testify at the hearing.  The parties stipulated that the exhibits established by clear and convincing evidence that Threlkeld had been convicted of a sexually violent offense and that he had a qualifying mental health disorder.  Accordingly, the only issue for the circuit court to determine was whether the exhibits established by clear and

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

convincing evidence that it was more likely than not that Threlkeld would commit another act of sexual violence.

¶4      The exhibits established that in 2000, Threlkeld was convicted of second-degree sexual assault.  Threlkeld repeatedly had sexual contact with his fourteen-year-old half-brother for over three years including "instances of oral sex, mutual fondling, rubbing penises together, and 'humping on each other'; and at least one instance of attempted anal sex."  He received a ten-year prison term.  In 2005, while on parole supervision from his sexual assault conviction, Threlkeld went to a Target store to find a teenage boy to groom for sexual activities.  He also stole pornographic magazines and hid them at his halfway house.  His parole was revoked.  In 2007, after his parole was revoked and while incarcerated, Threlkeld had anal and oral sex with his half-brother, who was the victim from Threlkeld's sexual assault conviction.  Threlkeld was disciplined by the prison for his conduct. In 2009, Threlkeld was committed as a sexually violent person under WIS. STAT. ch. 980.

¶5      The circuit court appointed Dr. Kelley to prepare a report examining Threlkeld.   Dr. Kelley diagnosed Threlkeld with pedophilic disorder due to Threlkeld's sexual attraction to young males.  Dr. Kelley explained pedophilic disorder predisposed Threlkeld to commit sexually violent acts.

¶6      Dr. Kelley discussed Threlkeld's successful progression through the treatment program, beginning with his voluntary entry into treatment immediately after his admission in 2008.  Threlkeld participated in a treatment track geared toward patients with low psychopathy and had completed Phases One and Two of the treatment program.  Threlkeld had been awaiting placement on supervised release since it had been ordered more than two years earlier.  While waiting for

3

supervised release, Threlkeld participated in group and individual therapy and maintained employment, where he received positive work reviews. Dr. Kelley reported that Threlkeld had developed effective strategies for suppressing his arousal to underage boys. Dr. Kelley also discussed Threlkeld's mixed record in maintaining his sexual fantasy and masturbation ("SFM") log. Polygraph results indicated that Threlkeld sometimes underreported deviant arousals involving children, and he had been found untruthful on a number of polygraphs between 2013 and 2022. Ultimately, after using actuarial assessment tools as well as other non-actuarial factors, Dr. Kelley opined that Threlkeld's ten-year risk of reoffending was 21.4% and his lifetime risk of reoffending was 31.5%.

¶7      Dr. Kolbeck prepared Threlkeld's most recent annual report for the Department of Health Services under WIS. STAT. § 980.07. Kolbeck's conclusions were substantially similar to Dr. Kelley's. Kolbeck diagnosed Threlkeld with pedophilic disorder and determined Threlkeld's ten-year risk of reoffending was 21% and his lifetime risk was 32%. Kolbeck also discussed Threlkeld's "mixed results" on polygraph verifications of his SFM logs. Additionally, Kolbeck considered a polygraph examination that Threlkeld passed after Kolbeck's initial report was filed in this case. In that polygraph, Threlkeld was found truthful in the maintenance of his SFM log. Kolbeck wrote that "The 05/10/22 polygraph results demonstrate [Threlkeld's] commitment to managing his sexual deviance."

¶8      Dr. Tomony, a treatment evaluator at Sand Ridge Secure Treatment Center, submitted a report discussing Threlkeld's progress in treatment. Tomony's report detailed the treatment Threlkeld participated in during his time at Sand Ridge for his WIS. STAT. ch. 980 commitment. Threlkeld did well with his treatment and had moved to the highest level of treatment available at Sand Ridge. Threlkeld was

working to appropriately manage his stress and consistently complied with facility rules.

¶9 Threlkeld identified his sexual interest in children as his number one risk factor. Threlkeld explained his sexual interest in children was not as strong as it once was "but crops up once in a great while." Threlkeld told Tomony on days where he had a bad attitude that he could not overcome, he would masturbate to the fantasy of a child from start to finish.

¶10 Threlkeld also struggled with being honest about his thoughts and actions. As a recent example, in Threlkeld's mid-October 2021 to mid-January 2022 SFM log, Threlkeld reported having one deviant fantasy involving a child; however, subsequent polygraph testing revealed that was not true. When Threlkeld was asked to explain how he went from reporting one instance of deviance in his SFM log to eleven instances at the polygraph interview to fifteen instances after being informed of his deceptive polygraph results, Threlkeld explained he tends to "log the good" and "ignore the bad." Threlkeld also stated he had forgotten about the episodes of masturbating to children until after he was confronted about being found untruthful. Tomony reported Threlkeld was dishonest in five of seven polygraph examinations during the last five-year period.

¶11 In making its final decision, the circuit court began its discussion by focusing on Tomony's treatment progress report. The court noted that during Tomony's interview with Threlkeld, Threlkeld identified his sexual interest in children as his number one risk factor. The court observed that honesty had been an ongoing problem for Threlkeld because of multiple untruthful polygraph examinations. The circuit court also emphasized Tomony's statement that Threlkeld's admission that he masturbated fifteen times to fantasies of children in a

recent three-month period suggested Threlkeld "reverted to a pattern of deviant sexualized coping from October 2021 through January 2022. He needs to do a better job of interrupting this sequence before he reinforces arousal to children via the pleasures of masturbation."

¶12 The circuit court observed that both Dr. Kelley's and Dr. Kolbeck's reports indicated that Threlkeld's management of his sexual deviance remained inconsistent. The circuit court stated that both doctors came "up with their formulas and their numbers indicating that obviously Mr. Threlkeld is not that much of a risk anymore."

¶13 However, the circuit court continued: "And I look at this case again the facts that I just went through and I think this case is one of those that falls out of the percentage area." The court emphasized Threlkeld's "polygraphs have not been honest, which can obviously have a big difference or inference on what the doctors say as to whether he is ready to be discharged."

> Those facts are pretty serious for the [c]ourt. They show he still has some major issues. He still is having fantasies for young boys. He also does not have a lot of support in the community that he wants to.
>
> He even admits himself that sexual interest in children is the Number 1 risk for him. It is a risk that is concerning for the [c]ourt.
>
> So I give him credit for trying to complete his treatment in Phase 3, but I think there are so many facts that I just went through that I think the Attorney General has shown through the doctor's reports that I went through that there is clear and convincing evidence that he still a danger to re-offend based upon his mental illness.
>
> And, again, I give great weight to the dishonesty. I give great weight to the statements of Mr. Threlkeld himself.
>
> It's not the [d]octor talking. It's Mr. Threlkeld talking about what he's doing. And it's all recent.

> There is still a lot of issues here for the [c]ourt. And I think there is a likelihood that he is going to commit future acts of sexual violence based upon his own statements and dishonesty which is, again, an important factor.

The circuit court concluded the State met its burden to demonstrate that Threlkeld remained a sexually violent person and denied Threlkeld's petition. Threlkeld appeals.

¶14 On appeal, Threlkeld argues the evidence was insufficient to support the circuit court's determination by clear and convincing evidence that it was more likely than not that he would commit another act of sexual violence. Threlkeld argues "[t]he exhibits submitted to the circuit court only reasonably supported a finding that Mr. Threlkeld no longer satisfied the criteria for commitment." Threlkeld emphasizes that both doctors who testified opined that, based on the actuarial assessments and extrapolations, Threlkeld's risk to reoffend was approximately thirty-two percent, which Threlkeld argues was below the fifty percent threshold for commitment. Threlkeld contends the fact that he failed some polygraphs was not enough to show he was more likely than not to reoffend. Threlkeld faults the circuit court for placing particular weight on his failed polygraphs, but not considering his recent success on the polygraph completed after the reports were filed. Threlkeld suggests that because the doctors considered Threlkeld's polygraphs but still considered his risk to be below the threshold for commitment, the circuit court should have reached the same conclusion.

¶15 "[W]e will not reverse an order denying a discharge motion based on insufficient evidence 'unless the evidence, viewed most favorably to the state and [the commitment], is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found' the person sexually violent by 'clear and convincing evidence' at a discharge trial."

*State v. Stephenson*, 2020 WI 92, ¶35, 394 Wis. 2d 703, 951 N.W.2d 819 (citation omitted). Further, the determination of whether the WIS. STAT. ch. 980 patient is more likely than not to engage in future acts of sexual violence remains within the purview of the factfinder. *See Stephenson*, 394 Wis. 2d 703, ¶29. The expert testimony "may inform the factfinder's decision but it is not necessary to conclude that a person is sexually violent." *Id.*

¶16 The Record in this case demonstrates that Threlkeld was convicted of second-degree sexual assault of a child. He has been diagnosed with pedophilic disorder, which makes him predisposed to commit an act of sexual violence. Although he has responded to treatment, the actuarial risk assessments and extrapolations still demonstrated that Threlkeld posed some risk of reoffending in the future. Additionally, Threlkeld has been untruthful in the recent past regarding his deviant sexual fantasies and masturbation. The Record reflects that the circuit court was very concerned about the failed polygraphs. The failed polygraphs indicated that Threlkeld was fantasizing about sexual contact with young boys, was acting on those fantasies by masturbating, and was trying to deceive his treatment providers by not including these incidents of masturbation in his SFM logs. We cannot conclude the evidence in this Record is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found by clear and convincing evidence that it was more likely than not that Threlkeld would commit another act of sexual violence. *See id.*, ¶¶7, 35.

¶17 Finally, and contrary to Threlkeld's arguments and attempts to distinguish *Stephenson*, the absence of an expert's ultimate opinion that Threlkeld's mental disorder made him more likely than not to commit another sexually violent act was not fatal to the circuit court's determination. *See id.*, ¶29. As explained in *Stephenson*, the circuit court as factfinder was free to assess how much weight, if

any, it should give to the experts' ultimate opinion on dangerousness. *See id.* Here, the circuit court chose to give more weight to other evidence in the Record, which it is permitted to do. *See id.* We affirm the circuit court's denial of Threlkeld's discharge petition.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9