COURT OF APPEALS
DECISION
DATED AND FILED

February 11, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP126**

Cir. Ct. No. 2023CV4960

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

SAVANNAH WREN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CALVIN GORDON, JR., AND CALVIN GORDON,

PLAINTIFFS-APPELLANTS,

V.

COLUMBIA ST. MARY'S HOSPITAL MILWAUKEE, INC, JESSICA HOELZLE, M.D., JORDAN HAUCK, D.O. AND INJURED PATIENTS AND FAMILIES COMPENSATION FUND,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Milwaukee County: KASHOUA KRISTY YANG, Judge. *Reversed and cause remanded for further proceedings*.

Before Donald, P.J., Geenen and Colón, JJ.

¶1 COLÓN, J. Savannah Wren, both individually and as the personal representative of the Estate of Calvin Gordon, Jr., and Calvin Gordon (collectively Wren) appeal from an order of the circuit court granting the motion to dismiss filed by Columbia St. Mary's Hospital Milwaukee, Inc., Jessica Hoelzle, M.D., Jordan Hauck, D.O., and Injured Patients and Families Compensation Fund (collectively Columbia St. Mary's). The order dismissed Wren's complaint alleging medical malpractice, wrongful death, and negligent infliction of emotional distress related to the care she received during her pregnancy and the death of Wren's newborn son, Calvin Gordon, Jr.

¶2 On appeal, Wren argues that the circuit court erroneously granted the motion to dismiss filed by Columbia St. Mary's. First, she argues that the circuit court erroneously found that WIS. STAT. § 806.04(11) (2021-22),[1] required Wren to name the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader as parties in this matter. She additionally argues that the circuit court erroneously found that Columbia St. Mary's was entitled to immunity under WIS. STAT. § 895.4801, and she argues that § 895.4801 is unconstitutional.

¶3 For the reasons set forth below, we agree with Wren. Therefore, we reverse the order of the circuit court dismissing Wren's complaint, and we remand this matter for further proceedings consistent with this opinion.[2]

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] While we reverse the circuit court's order dismissing Wren's complaint in this matter, we note that there were several failures by counsel to comply with our rules of appellate procedure. We remind counsel that a failure to comply with the rules of appellate procedure may be grounds for, *inter alia*, dismissal. WIS. STAT. RULE 809.83(2).

## BACKGROUND

¶4    Wren filed a complaint on July 6, 2023, against Columbia St. Mary's, alleging three counts of medical malpractice and wrongful death and one count of negligent infliction of emotional distress related to the care she received during the end of her pregnancy in May 2020 and the death of her newborn son on May 24, 2020.[3]

¶5    At the time of Wren's pregnancy and birth of her son in May 2020, the country was in the midst of the COVID-19 pandemic. In response to the pandemic, Governor Tony Evers declared a state of emergency on March 12, 2020, for the State of Wisconsin in Executive Order No. 72. The legislature also passed several pieces of legislation in response to the pandemic. As relevant here, the legislature passed WIS. STAT. § 895.4801 on April 15, 2020, as part of a larger bill responding to the COVID-19 pandemic, and established immunity for health care providers for certain acts and omissions beginning on March 12, 2020, and lasting for sixty days following the end of the state of emergency. *See* 2019 Wis. Act 185, § 98. On the basis of this legislation, Columbia St. Mary's moved to dismiss Wren's complaint and argued that § 895.4801 provided immunity from Wren's claims.[4]

---

[3] Wren provided this court with an extensive appendix (over 300 pages) and citations in her briefs to materials in the appendix. Our rules of appellate procedure require citations to the record. WIS. STAT. RULE 809.19(1)(d)-(e). To the extent that the appendix contains materials that are not contained in the record, we do not consider them. "The appendix may not be used to supplement the record[.]" *Reznichek v. Grall*, 150 Wis. 2d 752, 754 n.1, 442 N.W.2d 545 (Ct. App. 1989). "We are bound by the record as it comes to us." *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26, 496 N.W.2d 226 (Ct. App. 1993).

[4] As the parties calculate, the alleged immunity provided by WIS. STAT. § 895.4801 extended to July 10, 2020, and therefore, there is no dispute that the underlying events occurred during the period of alleged immunity.

¶6      In response to the motion to dismiss, Wren argued that WIS. STAT. § 895.4801 was unconstitutional because it violated several constitutional provisions, including the First, Seventh, Fifth, and Fourteenth Amendments of the United States Constitution, and article I, section 9 of the Wisconsin Constitution. Wren additionally filed a supplemental response brief and argued that § 895.4801 violated equal protection principles. In reply, Columbia St. Mary's again raised the issue of immunity from suit under § 895.4801, and it also argued that Wren failed to provide "notice" as required by WIS. STAT. § 806.04(11) to the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader of Wren's claim involving the constitutionality of § 895.4801.[5]

¶7      At a hearing held on November 10, 2023, the circuit court addressed several violations of local rules, including the timeliness of Wren's supplemental response brief and Wren's failure to file copies with the circuit court of non-Wisconsin legal authorities she relied upon. The circuit court found that Wren's supplemental brief was untimely and that the untimeliness was not due to excusable neglect or for good cause. Consequently, the circuit court struck Wren's supplemental brief.[6] The circuit court additionally provided Wren with the

---

[5] Wren notes that Columbia St. Mary's raised the issue of notifying the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader for the first time in the reply brief. However, prior to Wren's response brief where she challenged the constitutionality of WIS. STAT. § 895.4801, there were no constitutional issues triggering the requirements of WIS. STAT. § 806.04(11). Therefore, we consider it immaterial that Columbia St. Mary's raised this argument for the first time in its reply brief.

[6] Wren does not develop any argument on appeal that the circuit court erroneously struck her supplemental brief raising the argument that WIS. STAT. § 895.4801 violates equal protection principles. "We cannot serve as both advocate and judge," and therefore, we do not discuss the matter further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (declining to address issues "inadequately briefed" and "unsupported by references to legal authority").

opportunity to cure her failure to file non-Wisconsin legal authorities, and ordered that the parties return on December 6, 2023, to address the motion to dismiss filed by Columbia St. Mary's.

¶8 Following the hearing, Wren filed copies of her non-Wisconsin legal authorities. She also filed documentation stating that, on November 14 and 15, 2023, the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader were served with copies of the summons and complaint for this matter, as well as copies of Columbia St. Mary's motion to dismiss and related briefing. She further provided a letter from the attorney general's office dated November 29, 2023, stating:

> Please be advised that we have decided not to appear in this matter at this time. The Attorney General may seek to appear if the issue of the constitutionality of a statute or ordinance is raised on appeal. Therefore, we request that the parties inform our office if the matter is appealed and the appeal raises the issue of constitutionality.

¶9 At the hearing on December 6, 2023, the circuit court granted Columbia St. Mary's motion, and it issued an order dismissing Wren's complaint. In an oral decision at the hearing, the circuit court found that WIS. STAT. § 806.04(11) required naming the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader as parties. In making this finding, the circuit court pointed to the opening language of § 806.04(11) stating that "all persons shall be made parties who have or claim any interest which would be affected." Because the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader were not named as parties to the action, the circuit court found that it lacked subject matter jurisdiction. The circuit court then proceeded to find that WIS. STAT. § 895.4801

provided immunity from suit to Columbia St. Mary's, and that Wren failed to meet the burden to demonstrate that the statute was unconstitutional.

¶10    Wren now appeals.

## DISCUSSION

¶11    On appeal, Wren raises two main arguments.  First, Wren argues that the circuit court erroneously found that she was required to name the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader as parties to fulfill the requirements of WIS. STAT. § 806.04(11). Second, Wren argues that WIS. STAT. § 895.4801 is unconstitutional and, as such, does not provide immunity to Columbia St. Mary's.  We address each argument in turn.

### I.    Requirements of WIS. STAT. § 806.04(11)

¶12    Wren argues that the plain language of WIS. STAT. § 806.04(11) requires only that the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader be served with a copy of the pleadings, and because she did this, she argues that the circuit court erroneously found that it lacked subject matter jurisdiction.[7]

¶13    Wren's argument presents a question of statutory interpretation. "The interpretation of a statute is a question of law that we review *de novo*." ***E-Z***

---

[7] For the sake of consistency with the terms employed by the parties and the circuit court, we use the term subject matter jurisdiction.  However, we question whether the use of subject matter jurisdiction is the appropriate term.  *See **Village of Trempealeau v. Mikrut***, 2004 WI 79, ¶9, 273 Wis. 2d 76, 681 N.W.2d 190 (explaining the difference between subject matter jurisdiction and competency).

*Roll Off, LLC v. County of Oneida*, 2011 WI 71, ¶16, 335 Wis. 2d 720, 800 N.W.2d 421 (emphasis added). "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning." *Id.* Additionally, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *Id.*

¶14     Turning to the statute, WIS. STAT. § 806.04(11) provides:

> If a statute, ordinance or franchise is alleged to be unconstitutional, or to be in violation of or preempted by federal law, or if the construction or validity of a statute is otherwise challenged, the attorney general *shall also be served* with a copy of the proceeding and be entitled to be heard. If a statute is alleged to be unconstitutional, or to be in violation of or preempted by federal law, or if the construction or validity of a statute is otherwise challenged, the speaker of the assembly, the president of the senate, and the senate majority leader *shall also be served* with a copy of the proceeding, and the assembly, the senate, and the state legislature are entitled to be heard.

(Emphasis added.)

¶15     We conclude that the plain language of WIS. STAT. § 806.04(11) requires service on the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader, and nothing in the plain language of the statute indicates that any of these individuals must be named as a party to satisfy the requirements of the statute.

¶16 Indeed, we have previously interpreted this language from WIS. STAT. § 806.04(11), and we stated, "The language of the statute makes it clear that the legislature did not intend to require that the attorney general be made a party." ***Town of Walworth v. Village of Fontana-on-Geneva Lake***, 85 Wis. 2d 432, 436, 270 N.W.2d 442 (Ct. App. 1978).[8] Rather, "[t]he purpose of the statute is to give the attorney general the opportunity to defend the statute, ordinance or franchise against a claim of unconstitutionality. The attorney general can perform this function without being made a party." ***Id.***

¶17 The statutory language as applied to the attorney general remains the same today, and therefore, the requirements of WIS. STAT. § 806.04(11) are satisfied simply by serving the attorney general with a copy of the proceedings. Moreover, given the identical language, our prior interpretation that § 806.04(11) does not require that the attorney general be made a party likewise applies to the speaker of the assembly, the president of the senate, and the senate majority leader. Thus, the plain language of § 806.04(11) similarly requires that the speaker of the assembly, the president of the senate, and the senate majority leader

---

[8] Wren incorrectly states that our supreme court decided ***Town of Walworth v. Village of Fontana-on-Geneva Lake***, 85 Wis. 2d 432, 436, 270 N.W.2d 442 (Ct. App. 1978). ***Town of Walworth*** nonetheless applies. *See ****Cook v. Cook***, 208 Wis. 2d 166, 189-90, 560 N.W.2d 246 (1997).

Additionally, Wren asserts that "hundreds" of cases have proceeded without naming the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader as parties. Wren is correct that in some instances these entities were not named as parties; however, we note that a closer inspection reveals that these entities were nonetheless involved in several of the cases cited. We further note that in other instances the State—represented by the attorney general—was a party to the action. *See, e.g.*, ***Winnebago County v. C.S.***, 2020 WI 33, 391 Wis. 2d 35, 940 N.W.2d 875 (amicus filed by attorney general); ***Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund***, 2018 WI 78, 383 Wis. 2d 1, 914 N.W.2d 678 (amicus filed by the attorney general on behalf of the State); ***State v. Hager***, 2018 WI 40, 381 Wis. 2d 74, 911 N.W.2d 17 (attorney general represented the State).

only need to be served with a copy of the proceedings and do not need to be named as parties to satisfy the requirements of § 806.04(11).

¶18 While the language of WIS. STAT. § 806.04(11) is clear, we nonetheless recognize that reading the language of § 806.04(11) in its full context and considering the surrounding language and related statutes further supports a plain language interpretation that § 806.04(11) only requires service and does not require naming the attorney general, speaker of the assembly, president of the senate, and senate majority leader as parties.

¶19 First, the requirements for a municipality stand in marked contrast to the requirements for the attorney general, speaker of the assembly, president of the senate, and senate majority leader. In reference to a municipality, WIS. STAT. § 806.04(11) states, "In any proceeding which involves the validity of a municipal ordinance or franchise, the municipality *shall be made a party*, and shall be entitled to be heard." *Id.* (emphasis added). The language of the statute applicable to municipalities clearly and plainly instructs that a municipality be "made a party." By comparing this language with the language applicable to the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader, it is clear that the plain language of § 806.04(11) does not require naming any of these entities to fulfill the requirements of the statute. Rather than state that any of these entities shall be made a party, as the statute instructs for municipalities, § 806.04(11) instructs instead that these entities shall be "served."

¶20 Second, additional language in WIS. STAT. § 806.04(11) and related statutes would become surplusage if the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader were required

9

to be named as parties. Following the language about making a municipality a party and serving the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader, § 806.04(11) states, "*If* the assembly, the senate, or the joint committee on legislative organization *intervenes* as provided under [WIS. STAT. §] 803.09(2m), the assembly shall represent the assembly, the senate shall represent the senate, and the joint committee on legislative organization shall represent the legislature." (Emphasis added.) Section 803.09(2m) then provides:

> When a party to an action challenges in state or federal court the constitutionality of a statute, facially or as applied, challenges a statute as violating or preempted by federal law, or otherwise challenges the construction or validity of a statute, as part of a claim or affirmative defense, the assembly, the senate, and the legislature *may intervene* … at any time in the action as a matter of right by serving a motion upon the parties as provided in WIS. STAT. § 801.14.

(Emphasis added.)

¶21 This additional language found in WIS. STAT. § 806.04(11) and WIS. STAT. § 803.09(2m) outlining the intervention of these entities would become mere surplusage if the statutory language at issue here was read to require more than service and instead automatically require the naming of the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader as parties at the outset.

¶22 Consequently, we conclude that the plain language of WIS. STAT. § 806.04(11) only requires service on the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader, and it does not require naming any of these entities as parties.

10

¶23  We further conclude that the circuit court erroneously found that it lacked subject matter jurisdiction because Wren did not name any of these entities as parties. *See Walt v. City of Brookfield*, 2015 WI App 3, ¶36 n.7, 359 Wis. 2d 541, 859 N.W.2d 115 (stating that a failure to comply with § 806.04(11) results in a lack of subject matter jurisdiction). The record clearly indicates that Wren provided the required service on November 14 and 15, 2023, and having fulfilled the service requirements of § 806.04(11), the circuit court erroneously found that it lacked subject matter jurisdiction over Wren's complaint.[9]

## II.     Constitutionality of WIS. STAT. § 895.4801

¶24  As previously noted, on April 15, 2020, during the COVID-19 pandemic, the legislature passed WIS. STAT. § 895.4801, titled "Immunity for Health Care Providers During COVID-19 Emergency." *See* 2019 Wis. Act 185, § 98. According to the accompanying Act Memo from the Wisconsin Legislative Council, the legislature passed 2019 Wis. Act 185 as part of the State of Wisconsin's response to the state of emergency created by the COVID-19 pandemic.[10] The act addressed several areas of concern including those related to state funding, unemployment assistance, worker's compensation, education, and other financial relief for households impacted by COVID-19. Specifically related to the health care and health care insurance industries, the act contained several

---

[9] Citing to the letter from the attorney general to Wren, Columbia St. Mary's contends that Wren failed to satisfy her obligation to notify the attorney general of the appeal in this case. WISCONSIN STAT. § 806.04(11), however, contains no duty to keep the attorney general updated on the status of a case involving a constitutional claim.

[10] The Act Memo can be found at https://docs.legis.wisconsin.gov/2019/related/lcactme mo/act185.pdf. A more detailed Information Memo accompanying 2019 Wis. Act 185 from the Wisconsin Legislative Council can be found at https://docs.legis.wisconsin.gov/misc/lc/informati on_memos/2020/im_2020_05.

provisions, including provisions relaxing credentialing requirements for certain health care professionals, suspending credential renewing requirements for emergency medical services personnel, provisions providing civil liability exemptions for the manufacture, distribution, and sale of medical supplies, and provisions related to insurance coverage for COVID-19 testing.

¶25    Returning to the immunity statute at issue here for health care providers, WIS. STAT. § 895.4801(2) as enacted provides:

> Subject to sub. (3), any health care professional, health care provider, or employee, agent, or contractor of a health care professional or health care provider is immune from civil liability for the death of or injury to any individual or any damages caused by actions or omissions that satisfy all of the following:
>
> (a) The action or omission is committed while the professional, provider, employee, agent, or contractor is providing services during the state of emergency declared under [WIS. STAT. §] 323.10 on March 12, 2020, by executive order 72, or the [sixty] days following the date that the state of emergency terminates.
>
> (b) The actions or omissions relate to health services provided or not provided in good faith or are substantially consistent with any of the following:
>
> 1. Any direction, guidance, recommendation, or other statement made by a federal, state, or local official to address or in response to the emergency or disaster declared as described under par. (a).
>
> 2. Any guidance published by the department of health services, the federal department of health and human services, or any divisions or agencies of the federal department of health and human services relied upon in good faith.
>
> (c) The actions or omissions do not involve reckless or wanton conduct or intentional misconduct.

¶26    Wren argues that WIS. STAT. § 895.4801 is unconstitutional because of the broad immunity that it provides to health care professionals and health care providers for acts and omissions that would ordinarily have served as the basis for medical malpractice and related claims, such as the ones Wren brings here. She specifically argues that § 895.4801 violates the due process protections of the Fifth and Fourteenth Amendments of the United States Constitution and the right to seek a remedy provision of article I, section 9 of the Wisconsin Constitution. Wren further argues that the United States and Wisconsin Constitutions expressly preclude laws like § 895.4801 from preventing citizens from seeking justice.

¶27    We review a challenge to the constitutionality of a statute *de novo*. *Blake v. Jossart*, 2016 WI 57, ¶26, 370 Wis. 2d 1, 884 N.W.2d 484. As part of our review, we presume that the statute is constitutional. *State v. Wood*, 2010 WI 17, ¶15, 323 Wis. 2d 321, 780 N.W.2d 63.

¶28    Challenges to the constitutionality of a statute are generally of two types: (1) facial challenges or (2) "as applied" challenges. *Blake*, 370 Wis. 2d 1, ¶26. Columbia St. Mary's asserts that Wren has made a facial challenge to WIS. STAT. § 895.4801. Wren has not clearly identified the type of challenge she makes in her briefing on appeal; however, she did represent to the circuit court below that she was making a facial challenge to the statute. Thus, we accept that Wren makes a facial challenge to the constitutionality of § 895.4801. "To succeed on a claim that a law is unconstitutional on its face, the challenger must demonstrate that the State cannot enforce the law under any circumstances." *Blake*, 370 Wis. 2d 1, ¶26.

¶29    Additionally, we must decide whether Wren's challenge to WIS. STAT. § 895.4801 requires the application of strict scrutiny or rational basis

review. *See Blake*, 370 Wis. 2d 1, ¶48. Wren argues that § 895.4801 deprived her of a fundamental right, thereby triggering strict scrutiny. In response, Columbia St. Mary's accepts Wren's argument that § 895.4801 implicates the fundamental right to a jury trial provided in article I, section 5 of the Wisconsin Constitution and also analyzes the constitutionality of § 895.4801 using strict scrutiny. Thus, we operate on the premise that Wren's challenge is one involving a fundamental right to a jury trial provided by of the Wisconsin Constitution.[11]

¶30 To be sure, an individual has long enjoyed the ability to pursue a medical malpractice claim, subject to certain statutes of limitations, statutes of repose, and other legislatively imposed rules, including the oft-litigated noneconomic damages cap. *See, e.g.*, *Aicher ex rel. LaBarge v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶¶44, 53-54, 237 Wis. 2d 99, 613 N.W.2d 849 (addressing the constitutionality of statutes of limitations and statutes of repose for a medical malpractice claim); *Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund*, 2018 WI 78, ¶¶1-2, 383 Wis. 2d 1, 914 N.W.2d 678 (addressing the

---

[11] We limit our discussion to Wren's argument that WIS. STAT. § 895.4801 deprived her of her right to a jury trial provided in article I, section 5 of the Wisconsin Constitution, and therefore, we do not discuss any argument that Wren purports to raise premised on violations of other constitutional provisions, including the First and Seventh Amendments of the United States Constitution, or any argument that the statute is unconstitutionally vague because it fails to define the term "good faith." *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]"). Furthermore, we note, as both Columbia St. Mary's and the amicus brief filed by the Wisconsin Association for Justice note, Wren has incorrectly identified the right to a jury trial provided by the Seventh Amendment of the United States Constitution as applicable to her claims. *See Village Food & Liquor Mart v. H & S Petroleum, Inc.*, 2002 WI 92, ¶7 n.3, 254 Wis. 2d 478, 647 N.W.2d 177 ("[I]t has been long-decided … that the Seventh Amendment to the U.S. Constitution does not apply to actions in state court."). Rather, the right to a jury trial provided in article I, section 5 of the Wisconsin Constitution would apply, which states, "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy[.]"

constitutionality of a noneconomic damages cap for a medical malpractice claim); *see also* WIS. STAT. §§ 893.55, 893.56, ch. 655.

¶31 The challenged legislation here, however, is one of immunity and serves a purpose different from those served by a statute of limitations, statute of repose, or damages cap. Unlike a statute of limitations, statute of repose, and other statutory restrictions on medical malpractice claims addressed by prior courts, immunity provides a complete shield from liability for health care professionals and health care providers for an act or omission that would otherwise serve as the basis for a claim. *See Willow Creek Ranch, L.L.C. v. Town of Shelby*, 2000 WI 56, ¶¶35-36 & n.11, 235 Wis. 2d 409, 611 N.W.2d 693 (recognizing that immunity operates as a shield from tort liability and allows an individual to perform a specific function without threat of liability). Consequently, WIS. STAT. § 895.4801, as an immunity statute for health care professionals and health care providers, completely eliminates any opportunity for a jury trial on one's claims related to an act or omission of a health care professional or health care provider for an individual, like Wren, who would otherwise be able to pursue a claim.

¶32 In other words, WIS. STAT. § 895.4801 is more than a mere limitation or restriction on Wren's ability to pursue her claims as a statute of limitations or statute of repose would be. Instead, § 895.4801 is the complete elimination of Wren's ability to pursue her claims by completely shielding health care professionals and health care providers from liability for anything short of acts or omissions involving reckless or wanton conduct or intentional misconduct. The right of access to the courts and the opportunity to have a jury trial has not been preserved in any capacity, and therefore, we consider that Wren's claim triggers strict scrutiny because it involves the complete and utter elimination of her

15

fundamental right to pursue a jury trial on what would otherwise have been an actionable claim for an allegation of a negligent act or omission absent WIS. STAT. § 895.4801. *See State ex rel. Strykowski v. Wilkie*, 81 Wis. 2d 491, 507, 261 N.W.2d 434 (1978) (declining to apply strict scrutiny because "[t]he right of access to the courts, where petitioners will have an opportunity for jury trials, is expressly preserved").

¶33    When challenged legislation implicates either a fundamental right or discriminates against a suspect class, we apply strict scrutiny. *State v. Alger*, 2015 WI 3, ¶39, 360 Wis. 2d 193, 858 N.W.2d 346. "A law subject to strict scrutiny will be upheld 'only if narrowly tailored to serve a compelling state interest." *Id.* (citation omitted). A law survives strict scrutiny only in rare cases. *State v. Baron*, 2009 WI 58, ¶48, 318 Wis. 2d 60, 769 N.W.2d 34. In this case, we conclude that, even assuming WIS. STAT. § 895.4801 served the compelling state interest of responding to the COVID-19 pandemic, the statute is not narrowly tailored in furtherance of this purpose, and therefore, it does not survive strict scrutiny.

¶34    There seems to be no dispute that WIS. STAT. § 895.4801 is broadly written and sweeping in the immunity it provides. As the statute provides, health care professionals and providers have immunity for any acts or omissions so long as those acts or omissions were in good faith and occurred during the state of emergency, or within sixty days thereafter. Sec. 895.4801(2)(a)-(b). The language of the statute excludes from immunity only those acts or omissions that involve reckless or wanton conduct or intentional misconduct. Sec.

895.4801(2)(c). There is no requirement that the acts or omissions have any nexus to the state of emergency declared in response COVID-19.[12]

¶35     Wren argues that the broad and sweeping nature of this immunity renders WIS. STAT. § 895.4801 unconstitutional because it completely eliminated her ability to seek a jury trial and pursue her claims against Columbia St. Mary's when her claims are unrelated to the state's response to the COVID-19 pandemic. She contends that she should not be denied the right to a jury trial on her claims simply because they arose during the state of emergency that Governor Evers declared in response to the COVID-19 pandemic.

¶36     By contrast, Columbia St. Mary's argues that the broad nature of the immunity was necessary in the face of the challenges presented to the health care industry during the state of emergency created by the COVID-19 pandemic— including those related to staffing and supply shortages—and providing immunity for all acts and omissions so long as they were taken in good faith was necessary to ensure the availability of health care services of all kinds during the state of emergency.

¶37     While we acknowledge that the health care system faced unique challenges during the COVID-19 pandemic, "[t]here is no pandemic exception … to the fundamental liberties the [c]onstitution safeguards.  Indeed, 'individual rights secured by the [c]onstitution do not disappear during a public health crisis.'"

---

[12] In fact, the original version of the statute introduced in the Assembly as 2019 A.B. 1038 provided immunity for "actions or omissions taken in providing services to address or in response to a 2019 novel coronavirus outbreak[.]"  This limiting language was struck by a later amendment introduced as Assembly Amendment 4.  *See* Wisconsin Legislative Council, Amendment Memo (Apr. 15, 2020), https://docs.legis.wisconsin.gov/2019/related/lcamendmemo/ab1038.pdf.

*Wisconsin Legislature v. Palm*, 2020 WI 42, ¶53, 391 Wis. 2d 497, 942 N.W.2d 900 (citation omitted). In other words, Wren's right to a jury trial on her claims did not disappear as a result of the state of emergency created by the COVID-19 pandemic when the reason for her claims is unrelated to the compelling state interest of responding to COVID-19 that underlies the statute. Simply because Wren was pregnant and had a baby during a pandemic does not make any health care she received related to COVID-19 and the state's response to it, and she cannot be denied a right to a jury trial on her claims when her medical care was unrelated to the compelling state interest behind the statute. Therefore, we conclude that the breadth of the immunity provided by WIS. STAT. § 895.4801 is not narrowly tailored to the compelling state interest that prompted the statute when it denies the right to a jury trial for claims involving medical care that was provided for a reason other than the treatment of COVID-19.

¶38 Columbia St. Mary's argues that the statute was narrowly tailored because it was limited in time. We are not persuaded that the statute's time limit renders the statute constitutional. *See Palm*, 391 Wis. 2d 497, ¶27 (rejecting "a specific, limited-in-time scenario" as "questionable and not relevant"). As Wren asserts, at the time the statute was passed, it was unclear how long the pandemic would last and, as a result, unclear how long the statute would ultimately pause the right to a jury trial and provide immunity to the health care industry for negligent acts or omissions that would have ordinarily served as the basis for claims, such as the ones Wren brings here. Thus, the fact that the immunity has since ended with the conclusion of the state of emergency created by the COVID-19 pandemic cannot save the statute.

¶39 Furthermore, even with a time limit, the fact of the matter remains that the statute, for a brief period of time, eliminated a patient's ability to seek a

jury trial for any negligent acts or omissions of a health care provider, without requiring that the care provided have a nexus with the stated compelling interest of responding to the COVID-19 pandemic. The fact that the statute was limited in time simply means that the state's compelling state interest prompting the statute's creation ended with the end of the state of emergency, and it has no bearing on whether the statute was ultimately narrowly tailored to meet the compelling state interest in the first place.

**CONCLUSION**

¶40 Accordingly, we reverse the circuit court's order dismissing Wren's complaint, and we remand this matter for further proceedings consistent with this opinion. We conclude that the circuit court erroneously dismissed Wren's complaint based on a failure to name the attorney general, the speaker of the assembly, the president of the senate, and the senate majority leader under WIS. STAT. § 806.04(11). The plain language of the statute requires service, and having provided service in this matter, Wren satisfied the requirements of the statute. We further conclude that WIS. STAT. § 895.4801 is unconstitutional and does not provide immunity to Columbia St. Mary's from Wren's claims.

*By the Court.*—Order reversed and cause remanded for further proceedings.

Recommended for publication in the official reports.